UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN S. ANIKIENKO, | ) | Case No. 1:07 CV 0305 |
| | ) | |
| Plaintiff, | ) | Judge John R. Adams |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Karen S. Anikienko claims disability following her June 20, 2002 right leg break while working with her horses. She appeals the Social Security Administration's denial of her application for disability insurance benefits *via* 42 U.S.C. §405(g) claiming that the denial was not supported by substantial evidence. At issue is the May 24, 2006 determination made by an administrative law judge following hearing (TR. 11-21). Following denial of review by the Appeals Council, this determination became the Commissioner's final decision. See 20 C.F.R. §404.981.

The ALJ found that Anikienko continues to suffer residual effects of right tibia and fibula fracture after open reduction and internal fixation, and residual effects of surgical repair of a torn left rotator cuff in addition to osteoarthritis of the right knee, obesity, and histrionic personality disorder (TR. 17).[1] The ALJ reasoned that the physical residuals from Anikienko's injuries do not prevent her from performing a limited range of light work with occasional use of stairs and ramps but no climbing ladders, ropes or scaffolds and no kneeling. Her left rotator cuff problem prevents her from

---

[1] The ALJ remarked on the curious note made by a consultative psychological examiner that Anikienko had been ordered by a Texas court to apply for disability (TR. 18, 128).

1:07 CV 0305                                   2

more than occasional work above shoulder level with her left arm and her mental impairment limits

her to simple, routine, etc. tasks (TR. 17-18).  Based on these restrictions the ALJ determined that

Anikienko could perform substantial gainful activity as a small parts assembler, mail sorter and

addressing clerk based on the testimony of a vocational expert who testified at the administrative

hearing (TR. 20-21, 295-303).


Anikienko challenges the determination raising the vague argument that the determination

ignored evidence of more serious disabling limitation.  The issues before this court must be resolved

under the standard whether there is substantial evidence in the record to support the Commissioner's

decision.  Substantial evidence is evidence that a reasonable mind would accept as adequate to

support the challenged conclusion.  *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230,

1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923

F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court

may "not inquire whether the record could support a decision the other way").


For the reasons that shall be explained, the flaws Anikienko points out in the ALJ's decision

provide no basis for its reversal.  First Anikienko presents a list of medical notes which are not

directly addressed in the decision beginning with left foot plantar fascitis (TR. 112).  Her treating

physician, Dr. Stanfield, performed a follow-up examination in October 2002 finding a good range

of motion of the foot, knee and ankle with minimal tenderness along the fracture site.  However he

1:07 CV 0305                              3

did note tenderness indicating plantar fascitis of the left foot. *Id.* He prescribed anti-shock foot orthotics and reported no subsequent pain due to fascitis in his records (TR. 110-111).

This medical note is not a "medical opinion" for purposes of 20 C.F.R. §404.1527(a)(2). Medical opinion in a term of art in social security disability and as defined under 20 C.F.R. §404.1527(a)(2) medical opinions are opinions about the nature and severity of the individual's impairments. See SSR 96-5p, *Kisner v. Astrue*, 2008 WL 215598 at *18 (N.D. W.Va.). This list of medical findings does not pertain to the doctor's judgment, and to constitute "medical opinion" it must "reflect judgment about the nature and severity of the impairments." See 20 C.F.R. §404.1527(a)(2). Hence the regulatory requirements to weigh and "give good reasons" for the weight given a medical opinion do not apply here. Compare, 20 C.F.R. §1527(d)(2); *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Even if the notation of plantar fascitis was a medical opinion, the ALJ's failure to mention it is harmless. See *Heston v. Commissioner of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001). This is a remediable condition, and a remediable condition does not qualify for disability insurance benefits. See *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967), *cert. denied*, 389 U.S. 993 (1967); *Awad v. Secretary*, 734 F.2d 288, 289-90 (6th Cir. 1984); *Hardaway v. Secretary*, 823 F.2d 922, 925 (6th Cir. 1987).

The same principles governing what constitutes "medical opinion" and against awarding disability based on remediable impairment also applies to Anikienko's November 15, 2002

1:07 CV 0305                                    4

complaint of ankle stiffness for which Dr. Stanfield ordered physical therapy (TR. 111). The physical therapist reported normal range of motion (TR. 229).

Third, Anikienko argues that the ALJ failed to take into account her complaints to Dr. Stanfield of pain on kneeling (TR. 110). The ALJ found that Anikienko "can never kneel." (TR. 18). How much more consideration does Anikienko believe she needs for her complaint that "she has trouble in the anterior aspect of the knee when she kneels."

Fourth, Anikienko complains that the ALJ's determination did not refer to the findings from Dr. Vicario (TR. 192). In that one page report the doctor notes that Anikienko is a new patient and she instructs Anikienko to schedule an appointment with Dr. Stanfield so a referral could be made (TR. 192). However, that report is not helpful to her cause. First, Anikienko mistakenly assumes that this report presents a medical opinion. It does not. Second, Dr. Vicario was not a treating physician at that time. This report was the product of Anikienko's first visit to the doctor so there was no ongoing relationship to qualify this doctor as a treating physician at the time the doctor rendered this report. See *Kornecky v. Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 506, 2006 WL 305648 (6th Cir. Feb. 9, 2006) (unreported). Third, while Dr. Vicario noted that Anikienko was again complaining of left foot plantar pain, it is this doctor's recommendation, which Anikienko ignores, that devastates her argument. Dr. Vicario, "Recommended that the patient fill Dr. Stanfield's prescription for a full shoe pad to help with her foot pain." (*Id.*). Not only is the impairment remediable but there is a failure to follow prescribed treatment. See 20 C.F.R.

1:07 CV 0305                                    5

§404.1530(b) ("If you do not follow the prescribed treatment without a good reason, we will not find

you disabled[.]"; and see *Awad*, 734 F.2d at 289; *Henry v. Gardner*, 381 F.2d 191 (6th Cir. 1967)

(interpreting former 20 C.F.R. §404.1502(g)).


Returning to the fifth matter in Ankienko's series of complaints, Anikienko refers to Dr.

Vicario's June 2004 report of left shoulder pain, right knee pain and wrist pain (TR. 215) and the

June 2004 MRI study results (TR. 159). The Commissioner points out that this report and study

were made subsequent to Anikienko's insured status which ended on September 30, 2003 (See TR.

17). "Title II of the Social Security Act provides disability benefits for a claimant who demonstrates

that he suffers a physical or mental disability . . . and that the disability arose prior to the expiration

of his insured status." *Califano v. Sanders*, 430 U.S. 99, 101, 97 S.Ct. 980, 982, 51 L.Ed.2d 192

(1977). The undersigned also adds that this doctor's report noted impairments which the ALJ had

taken into consideration in limiting Anikienko to a partial range of light work including standing and

walking for six hours in an eight-hour day with normal breaks and only occasional work above

shoulder level with her left arm and no kneeling (TR. 17-18). Anikienko refers to nothing which

would change the residual functional capacity assessment assigned to her by the ALJ.


Sixth, Anikienko maintains that she had severe mental limitation which was erroneously

diminished in the determination. Anikienko demands that the ALJ should have gone into more detail

about Dr. Smith's consultative psychological examination. She points out that Dr. Smith found that

there may be occasional problems with short term memory and fitting into work environments (TR.

1:07 CV 0305                                6

134-35), which the ALJ failed to consider. However, she defeats this argument pointing out that Dr. Smith found that memory testing revealed average memory (TR. 132). In fact Dr. Smith noted that Anikienko did well on working memory as well as auditory recognition (TR. 133). Furthermore, the ALJ relied on the mental residual functional capacity assessment prepared by the non-examining state agency psychologist who after examining Dr. Smith's report and other information in the record determined there is only mild functional limitation in activities of daily living and maintaining social functioning, moderate restriction in difficulties in maintaining concentration, persistence or pace and no limitation due to decompensation (TR. 19, 150). This mental residual functional capacity assessment quantified findings in regard to work capabilities indicating no significant limitation for the most part (TR. 19, 137-38).

Anikienko next complains that this mental residual functional capacity assessment indicated "moderate" restriction in ability to: maintain concentration for extended periods; ability to accept instruction and respond appropriately to criticism from supervisors; and ability to respond appropriately to changes in work setting (TR. 137-138). Actually though Anikienko exaggerates a bit because the state agency physician checked the boxes for both "not significantly limited" and "moderately limited" in two of these areas which would indicate mild as opposed to moderate limitation. In any event, the ALJ found Anikienko limited to simple, routine, low-stress tasks that involve only limited and superficial interaction with supervisors, coworkers and the public (TR. 18). Simple and routine work reasonably appears to address the mild concentration and attention issue as well as the moderately limited ability to respond appropriately to changes in work setting. Further

1:07 CV 0305                                    7

the mild limitation in accepting instruction and criticism from supervisors is reasonably accommodated by the limitation to superficial interaction.  Accordingly, Anikienko has not demonstrated error in the ALJ's decision. The ALJ's resolution of the mental restrictions was supported by substantial evidence.


Finally, Anikienko touches upon the post-hearing evidence.  Anikienko complains that there is no mention of psychologist Dr. Craciun's October 17, 2003 report in the decision (TR. 227), nor reports from the Nord Center (TR. 240).  Both these reports were submitted after the hearing, though. The undersigned notes that the ALJ's decision refers to Exhibits 1F through 9F (See TR. 18-19). Exhibit 9F (TR. 184-221) was marked as received on January 4, 2006, well before the February 6, 2006 administrative hearing in this matter.  (See TR. 279).  At the close of the hearing the ALJ agreed to allow counsel to submit emergency room records of the 2005 automobile accident (TR. 306).  The ALJ apparently misspoke because according to the transcript the attorney was concerned about automobile accident reports from 1983 (TR. 305).  Records of the 1983 automobile accident were not received after the February 2006 hearing.


The reports that were submitted by counsel post-hearing cannot be considered by the Court, and Ankienko has not demonstrated that this evidence should have been considered by the ALJ. Good cause for the ALJ to consider post-hearing evidence exists when counsel had contemporaneously requested that the record remain open to receive it.  Otherwise counsel is presumed to have made the best case. See *Delgado v. Commissioner of Soc. Sec.*, 30 Fed. Appx.

1:07 CV 0305                                        8

542, 549 (6th Cir. March 4, 2002) (unreported) citing *Willis v. Sec. of Health and Human Services*,

727 F.2d 551, 554 (6th Cir. 1984); *Sears v. Sec'y of Health and Human Services*, 846 F.2d 394, 402

(7th Cir. 1988).


   Instead of following through with the agreement concerning the open record, on April 25,

2006 Anikienko submitted medical records from the Nord Center covering the latter portion of 2003

(TR. 239-260). Subsequently on May 4, 2006 Anikienko submitted records from Southwest General

Hospital treatment during 2005 (TR. 261-276). These reports became part of the record presented

to the Appeals Council identified as "AC-1" and "AC-2" (See TR. 4, 5-7 and Order of Appeals

Council TR. 8).


   What confuses the situation is that on May 12, 2006 Anikienko submitted records of her

treatment by Kaiser Permanente during 2002 and 2003 (TR. 225-238). These records did not

become part of the post-hearing record presented to the Appeals Council but for some reason were

designated as Exhibit No.11F and included in the list of exhibits, obviously by mistake. This also

occurred with what became marked as Exhibit 10F, reports from Dr. Stanfield in 2005 included

with counsel's letter dated January 13, 2006. (TR. 222-224) The record only establishes that Exhibits

1F through 9F were extant at the time of the administrative hearing and while the record was left

open to include exhibits relating to the 1983 automobile accident, no such exhibits were filed. Since

post-hearing inclusion of Exhibits 10F and 11F was not reserved by counsel Exhibits 10F and 11F

were not properly before the ALJ. Rather, it appears that Exhibits 10F and 11F should have been

1:07 CV 0305                                   9

submitted to the Appeals Council for consideration as additional evidence, as were the post-hearing

submissions designated AC-1 and AC-2, but presumably due to clerical error, they were not.


The only remedy the court has to offer is remand under the sixth sentence of 42 U.S.C.

§405(g). The district court's function is limited to review whether the administrative decision was

not supported by substantial evidence based solely on the record actually reviewed. *Cotton v.*

*Secretary*, 2 F.3d 692, 695-96 (6th Cir. 1993); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The district court cannot consider new evidence, but may under the sixth sentence of 42 U.S.C.

§405(g) remand the case to the Commissioner when claimant establishes that there was "good cause"

for failing to submit the evidence, that the evidence was truly new, and that this new evidence would

likely result in a material change in the administrative decision. See *Cotton*, 2 F.3d at 695-96; *Cline*

*v. Commissioner*, 96 F.3d 146, 148-49 (6th Cir. 1996); *Wyatt v. Secretary*, 974 F.2d 680, 685 (6th Cir.

1992); *Faucher v. Secretary*, 17 F.3d 171, 173-75; *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir.

1988); and see *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 79 (1991)

(evidence which might have changed the outcome of the prior proceeding).


Anikienko has not anticipated this issue and has not shown "good cause" why these reports

were not presented at or before the hearing. These reports are evidence that could have been

available prior to the hearing, and plaintiff has not "detailed any obstacles that prevented [her] from

entering this evidence" timely into the record. See *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.

2007); *Willis v. Sec'y. of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (*per curiam*).

1:07 CV 0305                                    10

Secondly, these reports were not "new." Third, much of this evidence is not material since it concerned treatment subsequent to the close of the eligibility period. Evidence of "aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Hum. Serv.*, 865 F.2d 709, 712 (6th Cir. 1980); *Oliver v. Sec'y of Health & Hum. Serv.,* 804 F2d 964, 966 (6th Cir. 1986). This evidence would not have likely changed the outcome of the determination if it had been presented to the ALJ.

Since no reason is provided to excuse the untimely submission of these exhibits or to demonstrate materiality, there should be no sixth sentence remand despite the fact that the Social Security Administration erred in failing to include two of the four post-hearing exhibits as evidence for review by the Appeals Council.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons Anikienko's arguments fail to demonstrate error in the final administrative decision. The Commissioner's decision is supported by substantial evidence.  It is recommended that the decision of the Commissioner denying disability insurance benefits be affirmed as supported by substantial evidence with judgment entered for the Commissioner.

       s/James S. Gallas       

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified

1:07 CV 0305                                    11

time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: April 18, 2008